## STATE v. SAFARIK.
No. 73-12241.
Circuit Court, Dade County, Criminal Appeal.
February 27, 1974.

Dennis Alan Richard of Richard & Richard, Miami Beach, for the appellant.

Richard E. Gerstein, State Attorney, John P. Durant, Assistant State Attorney, for the appellee.

GRADY L. CRAWFORD, Circuit Judge.

This cause having come on to be heard on appeal from a judgment of the county court and the court having heard argument of counsel, having read the briefs filed herein, having examined the record and file, and otherwise being fully advised in the premises, finds as follows —

Defendant was charged with violation of section 30-285 of the Metropolitan Dade County Traffic Code, which reads —

> "*Limitations on turning around.* — The driver of any vehicle shall not turn the vehicle so as to proceed in the opposite direction upon any street in a business district

and shall not upon any other street so turn a vehicle unless such movement can be made in safety and without interfering with other traffic."

There was no dispute at the trial that at the intersection in question there was a sign reading "U-Turn Permitted — Use Caution". A picture of the sign was identified at the trial and admitted into evidence.

There also was no dispute at the trial that defendant was at a complete stop, with his left turn signal on, waiting for oncoming traffic to clear so that he could make a U-turn in safety and without interfering with other traffic. Defendant was never actually able to decide to go ahead and make the turn, i.e., to decide that it had become safe and that it could be made without interfering with traffic, because while waiting, a police car ran into the rear-end of his tractor-trailer.

The officer involved in the accident testified only that defendant had been proceeding in the center lane and that the rear of his truck suddenly moved into the left lane slightly in front of him, offering no testimony and making no mention of any turns by the defendant. The defendant was not charged with "improper change of lane or course", which the officer testified to and is provided for on the Uniform Citation, but was charged with violation of the local ordinance which begins —

"The driver of any vehicle shall not turn the vehicle so as to proceed in the opposite direction . . ."

The investigating officer, Clark Curlette, testified that when he arrived at the scene, "the vehicles were in place at point of impact and the defendant's vehicle was in the middle lane of Collins Avenue, which is southbound three lanes". Upon inquiry by the court, Officer Curlette testified that defendant was attempting to make a turn from the center lane. However, Officer Curlette was not present at the time of the accident, couldn't know what defendant was attempting to do, and later admitted he was not an expert in accident investigation. Neither did Officer Curlette testify that defendant ever made or attempted to make a turn *"so as to proceed in the opposite direction,"* the actual act which is the crux of the prohibition under the statute defendant was charged with.

Finally, this testimony by Officer Curlette, who was not a witness to the accident — that defendant was attempting to make a turn from the center lane — was not confirmed by either of the uninvolved eyewinesses, and was not even confirmed by the officer involved in the accident. To the contrary, the statements of both

eyewitnesses and sixteen 5 x 7 color photographs diametrically contradicted the entire testimony of Officer Curlette, including the only thing in his direct knowledge — the position of the defendant's vehicle after the accident at the point of impact.

The statement of Paul Terry, an out-of-state eyewitness to the accident, was admitted into evidence and reads —

> "I was in the driveway of the Hawaiian Isle Motel attempting to proceed north on Collins Avenue when I heard a siren and saw the police car swerving south on Collins Avenue. The truck was attempting to make a U-turn and was in the left lane hanging into the center lane slightly when the police car lost control and ran under the truck. The truck was sitting dead stopped.
>
> "Truck had left turn signal on. The police had the siren on."

Ruth Butler, the only other eyewitness that defendant knew about at the time of the trial, testified that she is the cashier at the Hawaiian Isle Motel directly across the street from where this accident occurred; that she saw the accident occur; that she saw it from before impact; that she saw the police car hit the truck; that defendant's truck was in the extreme left-hand lane; that the truck was never in the center lane; that she saw the truck when it was approaching the corner and that it approached in the left-hand lane; that the truck approached the point where it stopped "very, very slowly"; that the truck did not stop suddenly.

Mrs. Butler further testified that she voluntarily went over to the scene of the accident after the commotion had ceased and the injured policeman was taken away and offered a statement to several of the policemen there; that she gave a signed statement to the officer she was directed to, prepared on a form he gave her; that she showed the officer her direct line of vision through her window. *Neither Mrs. Butler's name nor her statement appeared in the police report, or anywhere, and her name did not appear on the officer's list of witnesses to appear at the trial.*

As demonstrated above, there was no evidence at the trial upon which the court could have found the defendant guilty of violating the provisions of the ordinance.

*There was no prosecutor at the trial.* The right to be tried in a courtroom presided over by a judge is the fairness guarantee of our adversary system of justice. The basic premise of the adversary theory upon which our system of jurisprudence rests is that two sides arguing opposing viewpoints to a neutral uninvolved party will come the closest we know how to arriving at truth. Obviously

any imbalance occurring in the system will tip the scales of truth or justice. Thus the same individual cannot be either both the prosecutor and the judge or the defense attorney and the judge. This is the very fundamental basis for receiving due process under our system.

In this case the judge directed all the questions to all the state witnesses that are normally asked by a prosecutor. The judge also cross-examined defense witnesses. Had the judge asked no questions of the state witnesses, there would have been no testimony. In this case no objection was made at trial. Where objection is made at the outset of a trial lacking a prosecutor, the trial should not proceed until one is present.

For the reasons hereinabove stated, it is ordered and adjudged that the judgment of the county court finding the defendant guilty is reversed. It is further ordered that the clerk of the county court refund to the defendant the fine in the amount of $15 and the court costs in the amount of $6 heretofore paid by the defendant.